UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

JOHN COSCO,                         )
                                    ) NO. CV-08-0887-LRS
          Plaintiff,                )
                                    ) **ORDER GRANTING DEFENDANT'S**
                                    ) **MOTION FOR SUMMARY**
                                    ) **JUDGMENT**
     v.                             )
                                    )
VICTORIA GEMMET,                    )
                                    )
          Defendant.                )
_____)

**BEFORE THE COURT** is the Defendant Victoria Gemmet's Motion for Summary Judgment, Ct. Rec. 29, filed on October 27, 2009.

**I.     BACKGROUND AND SUMMARY OF FACTS**

Plaintiff John Cosco, proceeding *pro se,* brought this 42 U.S.C. § 1983 action against Defendant Victoria Gemmet, a registered nurse at California State Prison-Sacramento.  In his Complaint, Plaintiff alleges that his Eighth Amendment rights were violated by Defendant who was "deliberately indifferent" to his medical needs by not providing him with a prescription medication or scheduling him for an immediate doctor's appointment to treat his eczema.

Plaintiff Cosco, a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) arrived at California State Prison-Sacramento (CSP-SAC) in Represa, California on June 5, 2007. (Def.'s Statement of Undisputed Fact (DUF 1.)  In June 2007, Defendant Gemmet was employed as a triage nurse at CSP-SAC (DUF 2), at which time she was on floating assignment at CSP-SAC and did not have a regular post.  Gemmet filled in for nurses regularly assigned to the facilities' clinics. (DUF 3.)

**ORDER - 1**

On June 12, 2007, Gemmet was assigned to work in the Facility B clinic and replaced the regular Facility B triage nurse, who was out of the office at that time. (DUF 4.) That same day, Gemmet received a Health Care Services Request Form from inmate John Cosco, stating that he had a skin condition and a rash. (DUF 5.) Because Gemmet was only replacing the triage nurse for that day, she had no control over the scheduling of Cosco's appointment. (DUF 6.)

The nursing protocol for treatment of skin conditions and rashes includes the following steps: (1) recording the patient's complaints regarding the skin condition; (2) completing an objective evaluation of the patient's condition, including recording vital signs and description of any skin lesions; (3) completing a treatment plan for the patient; and (4) educating the patient on treatment of the skin condition. (DUF 7.) On June 12, 2007, Gemmet treated Cosco, and followed the nursing protocol by first recording Cosco's complaints of an itchy rash and lesions on his harms and legs. (DUF 8.) Gemmet then conducted an objective evaluation of Cosco's condition, recording his vital signs, and noting the location, size, and color of his skin lesions. (DUF 9.) Gemmet then completed a treatment plan for Cosco's skin condition. (DUF 10.)

After seeing an inmate at the CSP-SAC nursing clinic, the treating nurse can refer the inmate to a CSP-SAC doctor by classifying the inmate as "Emergent," "Urgent" or "Routine." (DUF 11.) If the inmate's health condition is "Emergent," the treating nurse arranges for the inmate to see a doctor immediately. (DUF 12.) If the inmate's health problem is "Urgent," the treating nurse places the inmate on a doctor's line to see a doctor the next day. (DUF 13.) If the inmate's health problem is "Routine," the treating nurse places the inmate on a doctor's line to see a doctor within the next 14 days. (DUF 14.) Under the nursing protocol, a patient does not require urgent medical treatment for a skin condition unless he is bleeding, experiencing a secondary skin infection, fever or lesion drainage. (DUF 15.)

**ORDER - 2**

While examining Cosco, Gemmet noted that he had rashes on his arms and legs, but he was not bleeding, experiencing a secondary skin infection, fever, or lesion drainage. (DUF 16.)  Gemmet therefore concluded that his rash did not need immediate or urgent medical treatment. (DUF 16.) Because Gemmet determined that Cosco was suffering a non-emergency rash, she did not schedule him for an "Emergency" or "Urgent" doctor's appointment. (DUF 17.) Instead, she classified his health condition as "Routine," and recommended that he receive a doctor's appointment within fourteen days. (DUF 17.)[1]

The nursing protocol for the treatment of eczema patients by a CSP-SAC Registered Nurse includes the following steps: (1) identify and remove the offending agent; (2) instruct the patient to apply hydrocortisone cream (1%) to the affected area no more than 3-4 times a day while symptoms persist; and (3) instruct the patient to return to the RN clinic for a follow-up if there is no improvement after seven days. (DUF 20.) Gemmet therefore offered Cosco hydrocortisone cream—which does not require a separate doctor's prescription—as treatment for his rash. (DUF 21.) Cosco refused Gemmet's offer of hydrocortisone and insisted that she give him Lidex—a potent medication requiring a doctor's prescription. (DUF 22.)

Lidex is a topical corticosteroid used in the treatment of eczema and psoriasis. (DUF 23.) It is more potent than hydrocortisone, can cause muscle atrophy, and is not recommended for long-term use. (DUF 24.) Unlike

---

[1]Cosco's condition of dry, red, itchy patches of skin was consistent with symptoms found in eczema. (DUF 18.) Eczema is a skin condition caused by a hypersensitivity reaction of the skin, which leads to long-term inflammation. (DUF 19.) The inflammation causes the skin to become itchy and scaly. (DUF 19.) Long-term irritation and scratching can cause the skin to thicken and have a leather-like texture. (DUF 19.)

**ORDER -  3**

hydrocortisone, Lidex is not approved for distribution by registered nurses. (DUF 25.)  Lidex may only be prescribed by physicians, clinicians, physician's assistants, or nurse practitioners. (DUF 25.)  For an inmate to receive a prescription for Lidex under the nursing protocol, the registered nurse needs to recommend that the inmate-patient have a separate appointment with the physician at the prison's clinic. (DUF 26.) The physician will then determine if it is necessary to prescribe Lidex to the inmate-patient. (DUF 27.) Gemmet explained to Cosco that she could not provide him with Lidex without a doctor's prescription, that he would need to schedule a doctor's appointment, and that a doctor would have to determine whether Cosco needed Lidex. (DUF 28.)

At the end of the appointment, Gemmet educated Cosco on skin care and advised him to resubmit a Heath Care Services Request Form if his condition did not improve. (DUF 29.) After her appointment with Cosco, Gemmet forwarded his paperwork to the B Facility Clinic's office technician, who was responsible for scheduling Cosco's doctor's appointment. (DUF 30.) Gemmet had no further involvement in Cosco's case, and no control over when the office technician scheduled Cosco's doctor's appointment. (DUF 31.)

Defendant asserts that Cosco's medical records show that her care of Cosco's skin condition was proper. (DUF 32.) Defendant argues that all necessary steps required under the prison's nursing protocol for treating inflammatory skin conditions were taken, and she conformed to the standard of care for the treatment of inflammatory skin conditions by CSP-SAC's Registered Nurses. (DUF 32.) Cosco's medical records from his appointment with Gemmet indicate that he did not suffer from any of the symptoms—such as bleeding, lesions, and secondary skin infections— necessitating immediate medical treatment or an immediate Lidex prescription. (DUF 33.) Had RN Gemmet requested an immediate prescription of Lidex for Cosco, she would have been acting outside of the bounds of the prison's nursing protocol for treatment of inflammatory skin conditions. (DUF 34.) Cosco's medical records show Gemmet's treatment did not cause him

**ORDER - 4**

any harm. (DUF 35.) To the contrary, Gemmet's treatment benefitted Cosco because it alerted medical staff at CSP-SAC of his skin condition. (DUF 35.)

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, plaintiff "may not rest on the mere allegations or denials" of his pleadings. He must demonstrate a "genuine issue for trial." *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989) (quoting

**ORDER  -  5**

Fed R. Civ. P. 56(e)). The evidence plaintiff relies on must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Matsushita*, 475 U.S., at 587. But an inference must be based on a supporting factual predicate. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244 45 (E.D. Cal. 1985), *aff*'d, 810 F.2d 898, 902 (9th Cir. 1987).

### B.     Deliberate Indifference to Medical Needs

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475 (1993). Prison officials must provide prisoners with adequate "food, clothing, shelter, sanitation, medical care and personal safety." *Toussaint v. McCarthy,* 801 F.2d 1080, 1107 (9th Cir. 1986). The state must provide medical care to prisoners and detainees because their confinement has deprived them of the ability to secure medical care for themselves. *Estelle v. Gamble,* 429 U.S. 97, 103-04, 97 S.Ct. 285 (1976).

In order to state a claim under 42 U.S.C. § 1983 for violation of the Eighth Amendment based on inadequate medical care, (1) the defendant must be a person acting under color of state law; and (2) the defendant engaged in "acts or omissions sufficiently harmful to evidence deliberate indifference to serious

**ORDER - 6**

medical needs." *Estelle*, 429 U.S. at 106.  To prevail, a plaintiff must show 1) that his medical needs were objectively serious; and 2) that defendant prison officials possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321 (1991); *McKinney v. Anderson*, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference." *Hudson v. McMillian*, 503 U.S. 1, 4, 112 S.Ct. 995 (1992).   The indifference to medical needs must be substantial; mere malpractice, or even gross negligence, does not constitute cruel and unusual punishment. *Estelle*, 429 U.S. at 106; *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990).

   A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).  "The existence of any injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."  *Id.* at 1059-60.

   Delay in providing medical care may manifest deliberate indifference. *Estelle,* 429 U.S. at 104-105.  However, mere delay in medical treatment, without more, is insufficient to state a claim of deliberate indifference.  A plaintiff must show that the delay caused further injury. *See Hallett v. Morgan*, 296 F.3d 732, 745-6 (9th Cir. 2002); *McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs.,* 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).  Prison medical officials, however, have wide discretion regarding the nature and extent of medical treatment.  *Jones v. Johnson* 781 F.2d 769, 771 (9th Cir. 1986); *see also Riley v. Rhay*, 407 F.2d 496, 497 (9th Cir. 1969).

   **C.   42 U.S.C. § 1983 Claims Against Defendant Gemmet**

   Section 1983 provides a cause of action against persons acting under color

**ORDER - 7**

of state law who have violated rights guaranteed by the Constitution. *See Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995); *Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir. 1984). A government official is entitled to qualified immunity unless: (1) the plaintiff alleged facts that show a constitutional violation, and (2) it was clearly established, at the time, that the conduct was unconstitutional. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*.

The two-step qualified immunity inquiry outlined in *Saucier* is not an inflexible requirement, and the Court may determine first if Defendant's actions violated clearly established law. *Pearson, et al. v. Callahan*, U.S. ; 129 S. Ct. 808 (2009). The Court, therefore, will first consider whether there has been a constitutional deprivation before considering whether Gemmet violated any clearly established law.

Defendant Gemmet argues that she is entitled to summary judgment because there are no material facts in dispute that support Plaintiff's claim that she violated his Eighth Amendment rights.

Plaintiff claims that Defendant Gemmet violated his Eighth Amendment rights by showing deliberate indifference to his serious medical needs, namely his rash. In his Complaint, Cosco contends that Gemmet should have looked through his medical file, recommended that he receive Lidex cream, and scheduled him for the next doctor's line, so that he would see a doctor in less than two weeks. (Compl. 10.)   To support his contention, Cosco explains that another registered nurse, RN Sandra Edmondson, reviewed his medical file and provided him with Lidex cream when she evaluated him on June 21, 2007. (Compl. 10.)

In opposition to Defendant's summary judgment motion, Plaintiff does not dispute that Defendant Gemmet evaluated his rash, offered hydrocortisone treatment, and recommended a doctor's evaluation within two weeks after she

**ORDER - 8**

evaluated his condition. Instead, Plaintiff claims that Gemmet is not entitled to summary judgment because she did not objectively evaluate his skin condition due to alleged "personal animosity," and his condition worsened as a result of Gemmet's actions. Ct. Rec. 39 at 2. Plaintiff further argues that Gemmet is not entitled to qualified immunity because she violated clearly established laws regarding treatment of his skin condition.

Plaintiff's opinion that Gemmet should have recommended that he immediately receive Lidex is not sufficient for a successful claim of deliberate indifference. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir.1981). Plaintiff's illustration regarding RN Edmondson's actions, i.e., arranging for an immediate Lidex prescription for Cosco, is immaterial in showing whether Defendant Gemmet was deliberately indifferent to Cosco's medical needs. At all times during the examination, Gemmet followed the proper nursing protocol for treating inflammatory skin conditions. (DUF 7-10, 16-18, 20; 21.) Under proper nursing protocol, Cosco's skin condition—which included no bleeding, lesion drainage, fever, or infection—did not warrant immediate or even urgent medical care from a doctor, or an immediate Lidex prescription. (DUF 33.) Gemmet did not have the authority to prescribe Lidex for Cosco, or even recommend to a physician that Cosco receive Lidex treatment. (DUF 23-28, 34.) Gemmet did not take the actions requested by Cosco because they were unnecessary and outside her authority as a registered nurse. Further, Plaintiff's assertion that his condition worsened as a result of Gemmet's actions is based on speculation, considering Plaintiff's refusal to accept Gemmet's offer of hydrocortisone.

The Court agrees with Defendant–the undisputed facts in this case show that Gemmet did not violate Cosco's Eighth Amendment rights because she did not knowingly disregard Cosco's medical needs when treating him for eczema. To the contrary, she evaluated his skin condition pursuant to proper nursing protocol, offered hydrocortisone, and scheduled him for a doctor's appointment. Cosco

**ORDER - 9**

received that doctor's visit within the time recommended by Defendant. Cosco did not suffer any harm as a result of Defendant's actions. For this reason, Gemmet is entitled to summary judgment on Cosco's claim of deliberate medical indifference. Having found no constitutional violation, the Court will not engage in a qualified immunity analysis.

### III.   CONCLUSION

Cosco's claims against Gemmet, the triage nurse at CSP-SAC, are not cognizable under 42 U.S.C. § 1983, based on the undisputed facts in this case. Plaintiff, the non-moving party, has failed to demonstrate any genuine issues for trial. For the foregoing reasons, Defendant's Motion for Summary Judgment, **Ct. Rec. 29**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this order and forward a copy to counsel and to *pro se* Plaintiff. Judgment shall be entered accordingly.

**DATED** this ___11th___ day of May, 2010.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Chief United States District Judge

**ORDER - 10**